Richard NEWMAN, Executor of the Last Will and Testament of America Newman, Deceased, Appellant,

v.

KENTUCKY–WEST VIRGINIA GAS COMPANY et al., Appellees.

Court of Appeals of Kentucky.

Nov. 8, 1963.

W. E. Faulkner, Faulkner & Faulkner, Hazard, for appellant.

Cordell H. Martin, Hindman, C. Kilmer Combs, Ashland, Rudy Yessin, Frankfort, for appellee.

CLAY, Commissioner.

This controversy involves the settlement of an estate, and particularly the title to a one-half interest in certain real property conveyed to the appellant, Richard Newman (individually), by his mother. The Chancellor adjudged the deed to appellant was champertous and void. No finding was made on appellant's defense that appellees were estopped by reason of laches to question this deed.

This litigation is over 30 years old. It began after Merica Newman's father died in 1929. Merica and her eight children were living in Oregon and California at the time. After the death of her father, her brother claimed title to the father's es-

tate. Merica solicited the aid of her children in prosecuting an action against their uncle for the purpose of determining title to the property. She agreed that any expense incurred by the children would be repaid at the rate of two dollars for every dollar expended. Seven of the children did little or nothing to assist her. The eighth child, appellant, moved from California to Kentucky, was given power of attorney by his mother to look after her interests, and did so through two trials in the circuit court and two appeals to the Court of Appeals. The result was that Merica defeated her brother's claim and was declared to have an interest in her father's property. It is interesting to note that the strife among these eight children was not confined to this state but that they also litigated kindred matters through the Supreme Court of Oregon.

After her title was finally established, Merica Newman executed the deed to appellant which is in controversy here. The deed, after reciting the history of the mother's litigation, contained the following language:

"Whereas it was necessary for her to have a representative in Kentucky acquainted with the situation respecting her father's estate, and the interest which she claimed therein, the first party, Merica Newman, *arranged with the second party,* her son, Richard Newman, *to represent her in all matters connected with the prosecution of the two suits mentioned above,* and to this end executed and delivered to him her power of attorney authorizing and empowering him to act for her and in her stead in all matters pertaining to the proper preparation and prosecution of said actions, *and agreed with said Richard Newman at the time that in the event she should be successful* in recovering what she claimed to be her interest in the estate of said Richard Hall, deceased, *she would convey to said Richard Newman a one-half undivided interest in such property as said*

*recovery might include; * * *."* (Our emphasis)

KRS 372.060 provides:

"Any contract, agreement or conveyance made in consideration of services to be rendered in the prosecution or defense, or aiding in the prosecution or defense, in or out of court, of any suit, by any person not a party on record in the suit, whereby the thing sued for or in controversy or any part thereof, is to be taken, paid or received for such services or assistance, is void."

█ On its face the agreement recited in the deed falls within the scope of this statute. Other evidence in the case is consistent with such agreement. As a matter of fact, appellant in his brief admits that this agreement would be champertous if made between his mother and a stranger. He contends that because of the blood relationship the statute should not apply to this family arrangement. That contention was conclusively answered in Charles v. Phillips, Ky., 252 S.W.2d 920. The Chancellor therefore correctly decided that the deed executed pursuant to this champertous agreement was void.

Appellant contends, however, that appellees were estopped by reason of laches to question this deed. This defense was pleaded by appellant in paragraph VII of his Reply to a counterclaim. (It may have been overlooked by the Chancellor in view of the extreme prolixity of this pleading, which violated CR 8.02. For some reason appellees in their brief ignored this issue though it was raised on appeal.)

█ Whether or not this was a valid defense we will not undertake to determine. Since a justiciable issue with respect thereto was presented by the record, it should be decided by the Chancellor. See Stephenson v. Burton, Ky., 246 S.W.2d 999.

The judgment is reversed, with directions to adjudicate the issue of estoppel and laches and to enter a new judgment in conformity with such determination.